UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------X

FOREST L. FATE,

                Plaintiff,

   -against-

GLENN GOORD, et. al.,

                Defendants.

------------------------------------X

11 Civ. 7493 (RWS)

OPINION

A P P E A R A N C E S:

     Pro Se

     FOREST L. FATE
     Five Points Correctional Facility
     Romulus, NY


     Attorneys for Defendants

     ERIC T. SCHNEIDERMAN
     ATTORNEY GENERAL OF THE STATE OF NEW YORK
     120 Broadway, 24th Floor
     New York, NY 10271
     By:  Jeb Harben, Esq.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 7 3112

**Sweet, D.J.**

Defendants Glenn Goord, the former Commissioner of what is now the New York State Department of Correction and Community Supervision ("DOCCS") ("Goord" or the "Former Commissioner"), Brian Fischer, current Commissioner of DOCCS ("Fischer" or the "Commissioner"), and John Lempke, Superintendent of the DOCCS Five Points Correctional Facility ("Five Points") ("Lempke" or the "Superintendent"), (collectively, the "Defendants"), have moved to dismiss pro se inmate Forest Fate's ("Fate" or the "Plaintiff") complaint (the "Complaint") pursuant to Rules 12(b)(1), (3), and (6) of the Federal Rules of Civil Procedure and 28 U.S.C. § 1406. Brought pursuant to the Rehabilitation Act, the Americans with Disabilities Act (the "ADA") and 42 U.S.C. § 1983, the Complaint has alleged violations of the Eighth, Ninth and Fourteenth Amendments of the U.S. Constitution for alleged delays in receiving a hearing aid by the Plaintiff while he was incarcerated at Five Points.

Based on the conclusions set forth below, the motion to dismiss is granted and the Complaint is dismissed.

**Prior Proceedings & Facts**

On October 16, 2011, Fate, pro se, filed the Complaint in the Southern District of New York and was granted in forma pauperis status.  The facts are set forth in the Complaint and the declarations submitted by the parties and are not in dispute except as noted below.

In July 2010, while incarcerated at Downstate correctional facility, Fate was scheduled for audiological testing.  (Complaint at Attached Page 1).  The results indicated that he suffered from a HL30 "non-significant hearing loss." According to Fate, the facility's medical staff offered a hearing aid and stated that he would be moved to a facility with other inmates with hearing loss for future follow-ups.  (Id.).

Fate was transferred to Five Points on August 2011. (Id.).  Upon his arrival, Fate informed the facility's medical staff that he had hearing loss and requested reasonable accommodations.  (Id.).  Fate sought a hearing aid and "shake awake" alarm.  (Id.).  According to Fate, he could not hear the meal or line up calls over the loudspeaker and missed meals and

3

count because of the lack of reasonable accommodations for his
hearing loss.  (Id.).

On August 8, 2011, Fate "tried to talk to the
officer's (sp) about my problem and they said they don't have
anything medically concerning hearing loss."  (Id.).
Thereafter, Fate contacted his wife and counselor about his
grievances.  (Id.).  His counselor informed him that he had been
scheduled to see the doctor at Five Points for audiology
testing.  (Id.).

According to the Complaint, on September 23, 2011,
Fate saw a doctor at Five Points who "said he didn't need to
test me, because I've already been tested and will be getting a
hearing aid, the next time he comes in about 30 days."  (Id. at
Attached Page 2).  The next day, Fate's counselor came to his
cell and asked him to sign a "reasonable accommodation" request.
(Id.).  According to Fate, he signed the document but would not
have done so had he known that the "shake awake" alarm was not
included in his request.  (Id.).

On August 8, 2011, Fate contacted DOCCS ombudsperson
Robert Raymond concerning his request.  (Id. at Attached Page

4

3).  On September 16, 2011, DOCCS responded, indicating that a
follow-up audiological appointment was scheduled to get a better
assessment of Fate's level of hearing loss as the initial
testing indicated "non-significant hearing loss."  (Id.).

According to Fate, because of the lack of
accommodations, he is depressed, scared, losing weight and
"suffer[s] daily in fear of what might happen when I leave my
cell and not hear an order by officers and they attack me
thinking that I'm trying to be a wise guy and I just don't hear
them."  (Complaint at IV).  The Complaint alleges that Sing Sing
prison is the more appropriate prison for Fate because it is
"the facility that most inmates were sent to with a hearing
problem like mines (sp)." (Id. at Attached Page 1).

According to the Defendants, "Five Points is staffed
and equipped to accommodate hearing impaired inmates and
currently houses numerous hearing impaired inmates in addition
to plaintiff."  (Heywood Decl. ¶ 3).  In addition, "DOCCS
currently houses 1697 offenders who have non-significant hearing
loss. . . [and] [m]ost offenders with non-significant do not
require a shake awake alarm as reasonable accommodation."  (Id.
¶ 4).  If DOCCS provided all hearing impaired inmates, including

5

those with non-significant hearing loss, with the shake awake

alarms, "it would cost DOCCS almost $42,425 the first year."

(Id.).

The instant motion was marked fully submitted on April

18, 2012.

**The Applicable Rule 12 Standards**

In considering a motion to dismiss pursuant to Rule

12, the Court construes the complaint liberally, accepting all

factual allegations as true and drawing all reasonable

inferences in the plaintiff's favor.  Mills v. Polar Molecular

Corp., 12 F.3d 1170, 1174 (2d Cir. 1993).  The issue "is not

whether a plaintiff will ultimately prevail but whether the

claimant is entitled to offer evidence to support the claims."

Villager Pond, Inc. v. Town of Darien, 56 F.3d 375, 378 (2d Cir.

1995) (quoting Scheuer v. Rhodes, 416 U.S. 232, 235-36, 94 S.

Ct. 1683, 40 L. Ed. 2d 90 (1974)).

In addressing the present motion, the Court is mindful

that Fate is proceeding pro se and that his submissions are held

to "less stringent standards than formal pleadings drafted by

6

lawyers." Hughes v. Rowe, 449 U.S. 5, 9, 101 S. Ct. 173, 66 L.
Ed. 2d 163 (1980) (quoting Haines v. Kerner, 404 U.S. 519, 520,
92 S. Ct. 594, 30 L. Ed.2d 652 (1972)). Courts "construe the
pleadings of a pro se plaintiff liberally and interpret them to
raise the strongest arguments they suggest." Fuller v.
Armstrong, 204 Fed. Appx. 987, 988 (2d Cir. 2006); see also
Lerman v. Bd. of Elections in City of N.Y., 232 F.3d 135, 139-40
(2d Cir. 2000) ("Since most pro se plaintiffs lack familiarity
with the formalities of pleading requirements, we must construe
pro se complaints liberally, applying a more flexible standard
to evaluate their sufficiency than we would when reviewing a
complaint submitted by counsel."). However, dismissal of a pro
se complaint is still appropriate where the plaintiff fails to
allege facts supporting his claim to relief. Rodriguez v.
Wepin, 116 F.3d 62, 65 (2d Cir. 1997).


Rule 12(b)(3) provides that a defendant may move to
dismiss a complaint on the grounds of improper venue. See Fed.
R. Civ. P. 12(b)(3). "[T]he burden of showing that venue in the
forum district is proper falls on the plaintiff." E.P.A ex rel.
McKeown v. Port Auth. of N.Y. & N.J., 162 F. Supp. 2d 173, 183
(S.D.N.Y. 2001). However, absent an evidentiary hearing, "'the
plaintiff need only make a prima facie showing of [venue].'"

Gulf Ins. Co. v. Glasbrenner, 417 F.3d 353, 355 (2d Cir. 2005)
(quoting CutCo Indus., Inc. v. Naughton, 806 F.2d 361, 364-65
(2d Cir. 1986)).

In addition, a case may be dismissed for lack of
subject matter jurisdiction under Rule 12(b)(1) "when the
district court lacks the statutory or constitutional power to
adjudicate it." Makarova v. United States, 201 F.3d 110, 113
(2d Cir. 2000). A facially sufficient complaint may be
dismissed for lack of subject matter jurisdiction under Rule
12(b)(1) if the asserted basis for jurisdiction is not
sufficient. See TM Patents, L.P. v. Int'l Bus. Machs. Corp., 121
F. Supp. 2d 349, 367-68 (S.D.N.Y. 2000); Peterson v. Continental
Airlines, Inc., 970 F. Supp. 246, 249 (S.D.N.Y. 1997). A
plaintiff bears the burden of proving by a preponderance of the
evidence that subject matter jurisdiction exists. Makarova, 201
F.3d at 113.

To survive a motion to dismiss pursuant to Rule
12(b)(6), "a complaint must contain sufficient factual matter,
accepted as true, to 'state a claim to relief that is plausible
on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct.
1937, 1949, 173 L. Ed. 2d 868 (2009) (quoting Bell Atl. Corp. v.

Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929
(2007)).  A plaintiff must allege sufficient facts to "nudge[ ]
their claims across the line from conceivable to plausible."
Twombly, 550 U.S. at 570.  "The plausibility standard is not
akin to a 'probability requirement,' but it asks for more than a
sheer possibility that a defendant has acted unlawfully."  Cohen
v. Stevanovich, 772 F. Supp. 2d 416, 423 (S.D.N.Y. 2010).
Though the court must accept the factual allegations of a
complaint as true, it is "not bound to accept as true a legal
conclusion couched as a factual allegation."  Iqbal, 556 U.S. at
678. (quoting Twombly, 550 U.S. at 555).


**Venue is Improper in this District**


        The instant action was filed in the Southern District
of New York by the Plaintiff as "related" to Clarkson v. Goord,
No. 91-1792(RWS).  There are no allegations, however, regarding
any violation of the Clarkson Consent Decree made in the
pleadings.  Thus, because the Plaintiff alleges that the events
in question arose at Five Point, which is located in the Western
District of New York, this action need not be deemed "related"
to Clarkson.

For venue purposes, it is well-settled under 28 U.S.C. § 1391 that public officials reside in the district in which they perform their official duties.[1]  See, e.g., Berry v. New York State Dep't of Correctional Servs., 808 F. Supp. 1106, 1108 (S.D.N.Y. 1992).  Here, not only did all of the relevant events occurred in Seneca County, New York, within the Western District of New York, but all of the Defendants work outside of the Southern District of New York.  Lempke currently works in Seneca County and both Goord and Fischer work or worked in the Northern District of New York.

A complaint fails for venue purposes where no material connections exist between the venue and the underlying events and parties.  See id. at 1109.  The Plaintiff has not made a prima facie showing of proper venue and accordingly venue is improper in the Southern District.  Where proper venue is not established pursuant to 28 U.S.C. § 1391(b), the remedy is dismissal or transfer.  See 18 U.S.C. § 1406(a).  The decision

---

[1] Section 1391(b) reads as follows:  A civil action wherein jurisdiction is not founded solely on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claims occurred, or a substantial part of the property that is the subject of the action is situated, or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought.

28 U.S.C. § 1391(b).

of whether to dismiss or transfer an action for improper venue
is within the discretion of the trial court. See Friedman v.
Revenue Mgmt. of New York, 38 F.3d 668, 672 (2d Cir. 1994).
Because the Complaint fails to state a claim as set forth below,
dismissal, rather than transfer, is appropriate.

## The ADA and Rehabilitation Act Claims Against the Defendants In Their Individual Capacities Are Dismissed

Monetary damages cannot generally be sought against
individuals under the ADA. See Johnson v. Goord, No. 01-
9587(PKC), 2004 WL 2199500, at *19 (S.D.N.Y. Sept. 29, 2004)
("[P]laintiff's claims against the individual defendants in
their official capacities under . . . the ADA fail because those
laws do not provide for money damages against the state or state
officials in their official capacities . . . ."); Carrasquillo
v. City of New York, 324 F. Supp. 2d 428, 441 (S.D.N.Y. 2004)
("Individuals cannot be named as defendants in ADA suits in
either their official or representative capacities.").

Similarly, there is generally no individual liability
for money damages, even in official capacity suits, under the
Rehabilitation Act. See Harris v. Mills, 478 F. Supp. 2d 544,
547-48 (S.D.N.Y. 2007) ("Because claims under the Rehabilitation

11

Act may not be brought against individuals, . . . [the]
Rehabilitation Act claim must also be dismissed.").

While the disability statutes do not permit claims
against officials in their individual capacities, suits against
individuals in their official capacities are condoned.  See
Garcia v. SUNY Health Sciences Center of Brooklyn, 280 F.3d 98,
107 (2d Cir. 2001).  Insofar as Fate is suing the Defendants in
their individual capacities, the Second Circuit has held that
"neither Title II of the ADA nor § 504 of the Rehabilitation Act
provides for individual capacity suits against state officials."
Id..

Accordingly, the ADA and Rehabilitation Act claims
against the Defendants, to the extent brought against the
Defendants in their individual capacities, are dismissed.

**The Constitutional Claims Against the Defendants Are Dismissed**

The Eighth Amendment, made applicable to the states by
the Fourteenth Amendment, prohibits the infliction of "cruel and
unusual punishment."  See Farmer v. Brennan, 511 U.S. 825, 828,
114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994) (holding that the

12

Eighth Amendment is applicable to the treatment and conditions of confinement of prison inmates). In addition, the Supreme Court has recognized a state's constitutional obligation to provide inmates with adequate medical care. See id. at 832. In order for a plaintiff to state a cognizable claim under Section 1983 for inadequate medical care, an inmate must allege acts or omissions sufficiently harmful to evidence "deliberate indifference" to his serious medical needs. Estelle v. Gamble, 429 U.S. 97, 104, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976). Deliberate indifference to the serious medical needs of someone in state custody is a violation of the Eighth Amendment inasmuch as it is the equivalent of "unnecessary and wanton infliction of pain." See id.

In order to make out a constitutional claim under the deliberate indifference standard, Fate must meet two requirements. First, the inmate's medical need must be "serious." See Flemming v. Velardi, No. 02-4133(AKH), 2003 WL 21756108, at *2 (S.D.N.Y. July 30, 2003) (citing Wilson v. Seiter, 501 U.S. 294, 298, 111 S. Ct. 2321, 115 L. Ed. 2d 271 (1991)). Second, the facts must give rise to an inference that the persons charged with providing medical care knew of those

13

serious medical needs and intentionally disregarded them.
Flemming, 2003 WL 21756108, at *2.

Regarding the first prong of the analysis, the inmate
must show that the alleged deprivation is objectively
"sufficiently serious."  Id.  This standard contemplates a
"condition of urgency, one that might produce death,
degeneration or extreme pain."  Hutchinson v. N.Y. State Corr.
Officers, No. 02-2407(CBM), 2003 WL 22056997, at **4-5 (S.D.N.Y.
Sept. 4, 2003).  Only "those deprivations denying the minimal
civilized measure of life's necessities are sufficiently grave
to form the basis of an Eighth Amendment claim . . . ."  Hudson
v. McMillian, 503 U.S. 1, 9, 112 S. Ct. 995, 117 L. Ed. 2d
(1992); Liscio v. Warren, 901 F.2d 274, 277 (2d Cir. 1990)
(condition must be life-threatening or fast-degenerating).

"In a typical Eighth Amendment denial of medical care
case, the prisoner is challenging the defendants' failure to
provide adequate medical care to treat the prisoner's medical
condition."  Smith v. Carpenter, 316 F.3d 178, 184 (2d Cir.
2003).  Because the "'the objective component of an Eighth
Amendment claim is . . . necessarily contextual' and fact-
specific, the serious medical need inquiry must be tailored to

14

the specific circumstances of each case." Id. at 185 (quoting Hudson, 503 U.S. at 8). It is "the particular risk of harm faced by a prisoner due to the challenged deprivation of care, rather than the severity of the prisoner's underlying medical condition, considered in the abstract, that is relevant for Eighth Amendment purposes." Id. at 186. The alleged deprivation of care must cause "a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." Chance v. Armstrong, 143 F.3d 698, 702 (2d Cir. 1998).

Examples of conditions considered by the Second Circuit Court of Appeals to be "sufficiently serious" under the Eighth Amendment vary a great deal, but include the failure to provide prescribed medication in the face of an inmate's extreme weight loss and deteriorating condition, see Kaminsky v. Rosenblum, 929 F.2d 922, 924 (2d Cir. 1992), a delay in removing broken pins from a prisoner's hip for more than two years despite nearly fifty complaints of pain, see Hathaway v. Coughlin, 37 F.3d 63, 65-66 (2d Cir. 1994), and chronic tooth pain lasting at least six months, rendering the prisoner unable to chew, and resulting in as many as three teeth degenerating to the point of requiring extraction, see Chance, 143 F.3d at 702.

While loss of hearing may be sufficiently serious, Fate has only alleged HL30 non-significant hearing loss and a relatively modest delay in providing him with a hearing aid. (Complaint at Attached Page 1). As noted in the Complaint, on September 16, 2011, DOCCS had advised Fate that he was scheduled for a follow-up appointment to further evaluate his hearing loss. (Id. at Attached Page 3). At no time did DOCCS deny Fate a hearing aid or other appropriate accommodations, instead it took steps that were necessary to review Fate's condition and provide him with the appropriate type of hearing aid for his needs.

In addition, Fate has not alleged any facts to support an inference that, with the use of hearing aids, his hearing would still have been impaired to the point that a major life activity was impaired. Measures to correct or mitigate a condition are relevant to whether a condition substantially limits a major life activity. See Fall v. N.Y. State United Teachers, 289 Fed. Appx. 419, 421 (2d Cir. 2008) (finding that plaintiff did not assert, or support with credible evidence, the proposition that her hearing loss was substantial when the corrective measures were employed).

16

Accordingly, the Complaint fails to allege facts necessary to satisfy the objective component of the Eighth Amendment analysis.

Even assuming that Fate's hearing loss was sufficiently serious, to satisfy the second prong of the analysis, an inmate must show that the prison official had a "sufficiently culpable state of mind" and must subjectively know of and disregard an excessive risk to inmate health and safety. See Seiter, 501 U.S. at 297; Hathaway, 37 F.3d at 66. "Deliberate indifference is 'a state of mind that is the equivalent of criminal recklessness.'" Hernandez v. Keane, 341 F.3d 137, 145 (2d Cir. 2003) (quotation omitted).

A plaintiff must show that the acts or omissions of defendants "involved more than lack of due care, but rather involved obduracy and wantonness in placing his health in danger." LaBounty v. Coughlin, 137 F.3d 68, 72 (2d Cir. 1998). Even if plaintiff claims he suffered pain, it would not in itself satisfy the state of mind requirement. See Seiter, 501 U.S. at 298-303. It is well-settled that "disagreements over medications, diagnostic techniques, forms of treatment or the

17

need for specialists or the timing of their intervention" are insufficient under § 1983.  Estelle, 429 U.S. at 106. Additionally, unsuccessful medical treatment alone does not give rise to § 1983 liability.  Id.

Indifference to serious medical needs is said to occur at the institutional, as opposed to the individual level, when a prison's system of medical care is so inadequate as to cause unwarranted suffering.  See Cruz v. Ward, 558 F.2d 658, 662 (2d Cir. 1977).  In keeping with this principle, it has been held by that "deliberate indifference" is "a standard for measuring the adequacy of prison officials' response to the known medical needs of inmates and their system for allowing inmates to make their needs known."  Dean v. Coughlin, 623 F. Supp. 392, 402 (S.D.N.Y. 1985), vacated and remanded on other grounds, 804 F.2d 207 (2d Cir. 1986).

Under certain circumstances, delay or denial of inmates' access to medical care amounts to deliberate indifference.  See Estelle, 429 U.S. at 104-05; Liscio, 901 F.2d at 276-77 (failure to examine inmate going through "life-threatening" and "fast-degenerating" condition for three days could constitute deliberate indifference); Hathaway, 841 F.2d at

18

50-51 (delay of two years in arranging surgery to correct pins in inmate's hip raises question of fact as to deliberate indifference of prison officials' conduct); Gill v. Mooney, 824 F.2d 192, 195-96 (2d Cir. 1987) (denial of access to exercise program and failure to provide necessary medical treatment as punishment for misconduct states colorable constitutional claim of deliberate indifference).

Upon his arrival, Fate met with the medical staff at Five Points, who responded to Fate's request by stating that he would get a hearing aid. (Complaint at Attached Page 2). On September 23, 2011, the doctor informed Fate that he "will be getting a hearing aid, the next time he comes in about 30 days." (Id.). The relatively short waiting period that Fate endured before receiving his hearing aid cannot be considered "deliberate indifference."

Moreover, Fate appears to have received his hearing aid and is no longer experiencing problems with waking up on time, which moots this issue. See Harblen Decl., Ex. A. While the Court is sympathetic that Fate missed meals as a result of not hearing meal times being called out over the loudspeaker, which caused him to lose weight and become depressed and scared,

19

there are no facts alleged in the Complaint sufficient to show
an Eighth Amendment injury.

   With respect to any claims for injunctive relief such
as transferring Fate from Five Points to Sing Sing Correctional
Facility, the Complaint similarly alleges no facts to support
such a transfer, other than allegations that Sing Sing is where
hearing impaired inmates are normally sent.  (Complaint at
Attached Page 1).  As the U.S. Constitution and federal law do
not guarantee a prisoner the right to be placed in any
particular prison, even if the degree of confinement or the
living conditions in one institution are more disagreeable than
in another.  See Meachum v. Fano, 427 U.S. 215, 224-25 (1976).
Accordingly, "prison officials have broad discretion to transfer
prisoners to another facility."  Odom v. Poirier, 2004 WL
2884408, at * 13 (S.D.N.Y. Dec. 10, 2004).  The placement and
transfer of inmates are examples of "inordinately difficult"
undertakings as to which the courts "accord deference to the
appropriate prison authorities."  Turner v. Safley, 482 U.S. 78,
84-5 (1987).

   In addition, the Complaint fails to make any
allegations specific to the named Defendants that could serve as

the basis for liability under Section 1983.  See Monell v.

N.Y.C. Dep't of Social Servs., 436 U.S. 658, 694, 98 S. Ct.

2018, 56 L. Ed. 2d 611 (1978).  To state a Section 1983 claim

for damages against an individual defendant, a plaintiff must

allege specific facts to show that each defendant was directly

or personally involved in the alleged violation of the

Constitution or laws; "that is, that there was 'personal

participation by one who ha[d] knowledge of the facts that

rendered the conduct illegal.'" McCoy v. Goord, 255 F. Supp. 2d

233, 245 (S.D.N.Y. 2003) (quoting Provost v. City of Newburgh,

262 F.3d 146, 155 (2d Cir. 2001)).


    The personal involvement of an individual may be

established by showing (1) direct participation in the

violation, (2) failure to remedy a known wrong, (3) creation of

an unconstitutional or illegal practice or custom, (4) gross

negligence in managing subordinates who have caused the

violation, or (5) failure to act on information indicating that

a violation was occurring.  Colon v. Coughlin, 58 F.3d 865, 873

(2d Cir.1995). Liability cannot be based on a theory of

respondeat superior, see Monell, 436 U.S. at 694, and Fate has

not shown how any of the named Defendants were involved in any

of the alleged Constitutional violations or why he has sued
these particular Defendants.

Even assuming for the purposes of this motion that
Fate has sufficiently pled claims against the Defendants,
dismissal would be granted to all Defendants based upon
qualified immunity.  State officials "are shielded from
liability for civil damages insofar as their conduct does not
violate clearly established statutory or constitutional rights
of which a reasonable person would have known."  Wilson v.
Layne, 526 U.S. 603, 614, 119 S. Ct. 1692, 143 L. Ed. 2d 818
(1999).  "A right is clearly established if (1) the law is
defined with reasonable clarity, (2) the Supreme Court or the
Second Circuit has recognized the right, and (3) a reasonable
defendant would have understood from the existing law that his
conduct was unlawful."  Anderson v. Recore, 317 F.3d 194, 197
(2d Cir. 2003).  "[T]he objective legal reasonableness of an
official's actions must be viewed in light of the action's
relationship to the clearly established law at the time."
Walentas v. Lipper, 862 F.2d 414, 423 (2d Cir. 1988), cert.
den., 490 U.S. 1021 (1989).  "Conduct that does not violate any
constitutional right certainly does not violate a constitutional

22

right that was 'clearly established'"  <u>Mozzochi v. Borden</u>, 959

F.2d 1174, 1179 (2d Cir. 1992).


The Complaint does not allege any facts demonstrating

that there was any basis to infer that any of the Defendants

would have reasonably believed that any law existed that

prohibited their conduct or that they were violating any

constitutional rights of Fate.  There is no clearly established

right to the immediate receipt of a hearing aid.  Moreover, the

Complaint pleads facts demonstrating that the DOCCS was in the

process of providing Fate with a functional and appropriate

hearing aid prior to his filing of the instant motion.


Taken together, the Complaint has not pled sufficient

facts to show that any of the Defendants violated any of Fate's

constitutional rights, and those claims are dismissed.


**Conclusion**


Based upon the conclusions set forth above, the

Defendants' motion to dismiss is granted.


23

When an amended complaint would be futile, a court
need not grant leave to replead.  <u>See</u> <u>Van Buskirk v. The New
York Times Co.</u>, 325 F.3d 87, 92 (2d Cir. 2003). Because even a
liberal reading of the Complaint suggests that no valid claim
could be stated against the named Defendants, Fate's claims
against as to these Defendants will be dismissed with prejudice.
<u>See</u> <u>Branum v. Clark</u>, 927 F.2d 698, 705 (2d Cir. 1991).


It is so ordered.


**New York, NY**
**July 29 , 2012**

ROBERT W. SWEET
U.S.D.J.

24